IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WAYNE F.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

        Defendant.

Case No. 3:18-cv-01515-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Wayne F. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

**BACKGROUND**

Born in 1968, plaintiff alleges disability beginning October 1, 2013, due to severe back pain and hypertension.[2] Tr. 176, 206. On June 9, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 36-63. On September 25, 2017, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-27. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

**THE ALJ'S FINDINGS**

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ determined the following impairments were medically determinable and severe: "hypertension; diabetes mellitus; umbilical hernia; chronic cholecystitis; obesity; degenerative disc disease; left shoulder arthrosis; obstructive sleep apnea; fibromyalgia." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 17.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b) except:

> he is limited to lifting 20 pounds occasionally, 10 pounds frequently; he is limited to carrying 20 pounds occasionally, 10 pounds frequently; he is limited to sitting up to 6 hours in an 8-hour workday; he is limited to standing and walking 2 hours total in an 8-hour workday; he is limited to pushing and pulling as much as lifting

---

[2] The record before the Court contains multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

and carrying; he is limited to occasionally reaching overhead with the left upper extremity; he is precluded from climbing ladders and scaffolds; he is limited to climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling at the occasional level; he is limited to no concentrated exposure to hazards, such as unprotected heights, heavy operating machinery, or operating a motor vehicle; he is limited to no concentrated exposure to airborne irritants, such as dusts, fumes, gases, and odors; he is limited to no exposure to machinery causing vibrations.

Tr. 19.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ concluded, based on the VE's testimony, that plaintiff could perform a significant number of jobs in the national economy despite his impairments, such as ticket seller, cashier, and gate guard. Tr. 26-27.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding his carpal tunnel and depression non-severe at step two; (2) discrediting his subjective symptom testimony; (3) discrediting the lay testimony of Sarah H.; and (4) rejecting the medical opinion of Matthew Chan, M.D.

**I.    Step Two Finding**

Plaintiff asserts the ALJ failed to find his carpal tunnel syndrome and depression severe. At step two, the ALJ determines whether the claimant has an impairment that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is severe if it "significantly limit[s]" the claimant's ability to do basic work activities. 20 C.F.R. § 404.1521. The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).

The ALJ thoroughly summarized medical evidence pertaining to plaintiff's physical and mental impairments, and found that his hypertension, diabetes, fibromyalgia, hernia and cholecystitis, obesity, degenerative disc disease, left shoulder arthrosis, and obstructive sleep

Page 3 – OPINION AND ORDER

apnea were medically determinable and severe at step two. Tr. 15-17. The ALJ also discussed plaintiff's depression and carpal tunnel syndrome, and determined both were medically determinable but non-severe because "there is no evidence of work-related limitations" from these conditions.³ Id. As such, any purported error was harmless because step two was decided in plaintiff's favor with regard to other ailments. Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

This is especially true considering plaintiff neglected to address how the ALJ's alleged error was harmful. See McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) (party seeking reversal bears the burden of establishing how the alleged error was harmful). Although plaintiff relies on his own hearing testimony, and records establishing diagnoses of depression and carpal tunnel syndrome, he does not identify any medical evidence evincing functional limitations arising from or relating to these impairments. Pl.'s Opening Br. 5-6 (doc. 16); Pl.'s Reply Br. 1 (doc. 21).⁴ Moreover, plaintiff never sought counseling or therapy related to his depression, despite the fact that his rheumatologist, Rashmi Shah, M.D., referred him to such services as part of his fibromyalgia treatment plan. Tr. 988.

Therefore, the ALJ adequately accounted for plaintiff's medically determinable and severe impairments at step two. Regardless, because the ALJ's sequential evaluation properly considered the effects of all of plaintiff's alleged symptoms, any purported error at step two was harmless.

---

³ The ALJ completed the requisite Psychiatric Review Technique in regard to plaintiff's depression, but found no greater than mild limitations in the four functional categories. Tr. 16-17; see also Hoopai v. Astrue, 499 F.3d 1071, 1076-87 (9th Cir. 2007) (mild mental impairments need not be accounted for in the claimant's RFC).

⁴ The excerpted testimony cited by plaintiff, when read in context, actually concerned symptoms and limitations stemming from his shoulder impairment and potential pinched nerve, or his general lack of stamina. Tr. 45-46, 48-49.

Burch v. Barnhart, 400 F.3d 676, 682-83 (9th Cir. 2005). The ALJ's decision is affirmed as to this issue.

## II. Plaintiff's Testimony

Plaintiff argues the ALJ erred by discrediting his subjective symptom testimony concerning the severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified he was unable to work due to "fatigue and back pain and overall joint pain throughout." Tr. 41. Plaintiff testified further that he has good days and bad days. Tr. 41-43, 46, 49-50. On good days, plaintiff tries to "help around the house" and "walk a little

bit," and can sit for 30 to 45 minutes before needing to change positions. Id. Conversely, on bad days, plaintiff is unable to get out of bed.[5] Id. Plaintiff occupies his time when he is bed-bound by "read[ing] a bit," "watch[ing] television on occasion," and sleeping; he is unable to sit for any duration of time. Tr. 43, 50. He denied engaging in any physical activities, including self-care, on bad days, explaining: "the best I can do is get myself up and use the restroom. And that's usually about it." Tr. 47. The only quasi-regular activity that plaintiff endorsed, other than attending medical appointments, was watching his two step-children, ages five and seven, "for about an hour" "[o]n occasion." Tr. 40, 46-47.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 19-25. Specifically, the ALJ cited to plaintiff's activities, improvement with treatment, and medication non-compliance. Id.

Notably, the ALJ found that plaintiff's "daily activities are inconsistent with his allegations of total disability." Tr. 20. An ALJ may discredit a claimant's testimony when he or she reports activities that "are transferable to a work setting" or "contradict claims of a totally debilitating

---

[5] Plaintiff estimated at the hearing that "once a week I might have what I consider to be a good day." Tr. 42, 46. He did not quantify the number of bad days but specified that, although significantly limited, there is some variation in his functioning the remaining six days per week. See Tr. 49-50 (differentiating between bad days, "worst case scenario bad day[s]," and "medium day[s]"); see also Pl.'s Reply Br. 2 (doc. 21) (acknowledging that his testimony regarding the number of days per week that he is completely unable to function "is somewhat convoluted"). The ALJ reasonably interpreted plaintiffs' hearing testimony as indicating that, most days, plaintiff is essentially stationary.

Page 6 – OPINION AND ORDER

impairment," even if "those activities suggest some difficulty functioning." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted).

Substantial evidence supports the ALJ's finding in the case at bar. As the ALJ denoted, plaintiff reported activities to his providers that were in excess of his testimony at the hearing. For instance, the record reflects that, during the adjudication period, plaintiff performed odd jobs for his friends, neighbors, and family; used an "old fashioned lawn mo[w]er for exercise every other day"; assisted and supported his roommate through her own health issues; went to friends' houses and started dating his current wife; and completed random chores, such as moving boxes and washing machines. Tr. 531, 622, 727, 738, 752, 786, 833, 941, 944, 950, 958, 983. In addition, plaintiff attended regular medical appointments, which required him to sit in the car and/or drive. See, e.g., Tr. 40-41, 837, 864-95, 947. As the ALJ reasonably concluded, this evidence undermines plaintiff's testimony that he is exceedingly physically limited even on good days.

The ALJ also determined that plaintiff's "problems with medication compliance" undermined his subjective symptom testimony. Tr. 24. An ALJ may rely on a claimant's unexplained, or inadequately explained, failure to follow treatment recommendations in evaluating testimony regarding the intensity or persistence of symptoms. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). While plaintiff's doctors prescribed a variety of medications for his impairments, and plaintiff indicated at the hearing that these medications were beneficial, he took them only "about 40% of the time." Tr. 43-44, 933-34; see also Tr. 744-46 (Dr. Chan noting in April 2015 that plaintiff "never picked up" his previous Flexeril prescription), 829 (another treatment provider noting in September 2015 that plaintiff has "difficulty [with] adhering to medication"). As of February 2017, plaintiff had not taken one of his medications "in over a year." Tr. 933-34. The

only reason plaintiff gave for his medication non-compliance was "feeling bad or being grumpy." Tr. 934.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements concerning the extent of his impairments. As a result, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's evaluation of plaintiff's testimony is affirmed.

### III. Third Party Testimony

Plaintiff contends the ALJ neglected to provide a germane reason to reject Sarah H.'s third-party statements. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted).

In July 2015, Sarah H. completed a Third-Party Adult Function Report. Tr. 238-45. Sarah H. explained that she had lived with plaintiff "as his girlfriend" until about six months prior; she presently saw him a few times a week to "assist him with cleaning, meals, shopping." Tr. 238. Her statements generally reflect that plaintiff had extreme back pain and fatigue, such that he did not engage in many regular daily activities beyond occasional shopping, attending doctors' appointments, and very minimal household chores. Tr. 239-43.

The ALJ discredited Sarah H.'s statements because they were "inconsistent with the objective evidence, treatment history, and demonstrated level of functioning, as discussed throughout this decision." Tr. 25. The ALJ also observed "it appears she based this statement on [plaintiff's] report instead of making her own objective statement." Id.

An ALJ may reject lay testimony on the same basis as the claimant's discredited subjective reports. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009). Likewise, inconsistency with the evidence of record is a germane reason to reject a third-party's statements. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

An independent review of the record reveals that Sarah H.'s testimony concerning plaintiff's functional limitations closely tracks plaintiff's subjective symptom statements. Compare Tr. 238-45, with Tr. 40-56, 216-23. As addressed in section II, the ALJ provided clear and convincing reasons, supported by substantial evidence, to afford less weight to plaintiff's subjective symptom testimony. These reasons are equally applicable to the statements provided by Sarah H. See Molina, 674 F.3d at 1114-22 (affirming the ALJ's decision "where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted). The ALJ's evaluation of the lay witness testimony is upheld.

## IV. Medical Opinion Evidence

Plaintiff asserts the ALJ improperly weighed Dr. Chan's opinion. There are three types of physician opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Id. To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. Bayliss, 427 F.3d at 1216 (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons supported by substantial evidence. Id.

Plaintiff initiated care with Dr. Chan in March 2015 for treatment of his back pain, shoulder pain, fatigue, high blood pressure, diabetes, and other intermittent conditions. Tr. 812-58, 932-66. In March 2016, Dr. Chan completed a "Physical Residual Functional Capacity Assessment" in support of plaintiff's disability claim. Tr. 928-32. Dr. Chan opined that plaintiff could: frequently lift/carry ten pounds; frequently climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and reach; occasionally handle and finger; stand and/or walk for less than two hours total in an eight-hour workday; and sit for less than six hours total in an eight-hour workday. Tr. 928-31. Additionally, the doctor indicated that plaintiff medically required a cane or walker to ambulate, and "must periodically alternate sitting and standing to relive pain or discomfort." Tr. 928. Dr. Chan attributed the aforementioned functional restrictions to plaintiff's "persistent and chronic" pain due to a combination of morbid obesity, fibromyalgia, shoulder injuries, and back problems. Tr. 929-30.

In April 2017, Dr. Chan completed a form indicating he continued to treat plaintiff and that the restrictions outlined in his March 2016 RFC "remain in place today." Tr. 980.

The ALJ assigned Dr. Chan's opinion "little weight" because it was inconsistent with his own treatment notes, which documented "only acute exacerbations of back symptoms" and "improvement with aquatic therapy," as well as "Dr. Shah's generally conservative treatment recommendations" and plaintiffs' activity level. Tr. 25. The ALJ further denoted that the "medical evidence does not support the need for a hand-held assistive device" because "Dr. Campbell noted a stable, and only mildly antalgic gait, upon examination." Id.

Although the ALJ articulated legally sufficient reasons in regard to Dr. Chan's report, those reasons are not supported by substantial evidence in the record. See Valentine, 574 F.3d at 692-93

(ALJ may reject a doctor's opinion that is contravened by other evidence in the record, including the doctor's own notes).

Turning to the ALJ's first rationale, Dr. Chan's chart notes support, rather than detract from, his opinion. Significantly, as plaintiff's treating (and, by extension, referring) physician, Dr. Chan had access to objective imaging studies of plaintiff's back, which showed moderate and severe foraminal stenosis at various levels. Tr. 637-38, 866-67, 895; see also Dahl v. Comm'r of Soc. Sec., 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (even mild degenerative disc disease can be disabling) (collecting cases); Wright v. Berryhill, 2017 WL 3399855, *6-7 (D. Or. Aug. 7, 2017) (reversing the ALJ's rejection of a treating provider's opinion regarding the claimant's limitations from severe back pain where imaging studies in the record "revealed mild to moderate spinal cord compression and stenosis"). Dr. Chan also repeatedly documented objective examination findings demonstrative of back impairment, as well as plaintiff's complaints of severe back pain. See, e.g., Tr. 833-34, 837-38, 841, 844-45, 847-48, 850, 857, 934, 944-45, 947, 961.

Moreover, Dr. Chan's chart notes, as well as other portions of the medical record, make clear that plaintiff stopped attending aquatic therapy in early 2017 due to pain. Tr. 44, 964, 967, 970-71. As a result, the fact that Dr. Chan indicated that plaintiff previously obtained some relief from aquatic therapy is immaterial. Similarly, the fact that Dr. Shah, who completed a one-time rheumatology examination in May 2016, offered only "conservative treatment recommendations" in regard to plaintiff's fibromyalgia[6] has little bearing on Dr. Chan's assessment of plaintiff's back and shoulder impairments. Tr. 988-89. While the record reflects intermittent activities that are inconsistent with plaintiff's hearing testimony, nothing about those activities inherently

---

[6] Given that fibromyalgia cannot be surgically corrected or otherwise aggressively treated, it is unclear how Dr. Shah's "conservative treatment recommendations" are relevant to Dr. Chan's opinion, even as it pertains to plaintiff's fibromyalgia.

Page 11 – OPINION AND ORDER

contradicts Dr. Chan's opinion, especially concerning plaintiff's frequent need to alternate positions. Tr. 928. This is especially true given that the record suggests plaintiff's conditions worsened over the course of the adjudication period.

As to the ALJ's final rationale, the record is replete with references to plaintiff's back pain, ginger movements, obesity, and balance and gait problems. See, e.g., Tr. 833, 837, 844, 847-48, 850, 857, 870-71, 948. As a result, both gait and balance training were a part of plaintiff's physical therapy. Tr. 885, 888-91. In other words, contrary to the ALJ's conclusion, the record readily supports the need for a hand-held assistive device.

Thus, the ALJ committed harmful error by failing to provide a legally sufficient reason, supported by substantial evidence, for rejecting Dr. Chan's functional restrictions. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). The ALJ's assessment of Dr. Chan's opinion is reversed.

**V.     Remedy**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. Id. at 1100-01 (citations omitted); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ erred by neglecting to furnish a legally sufficient reason, supported by substantial evidence, for rejecting Dr. Chan's opinion. The record before the Court is nonetheless ambiguous regarding the extent of plaintiff's allegedly disabling impairments. On the one hand, plaintiff engaged in activities during the adjudication period that were in excess of his subjective symptom testimony. On the other hand, plaintiff sought regular treatment for his pain symptoms, especially during the latter half of the adjudication period. Further, there is evidence in the record demonstrating that plaintiff's back impairment and mobility worsened over time. See, e.g., Tr. 637-38, 866-67, 895, 953, 964, 967; see also Daley v. Colvin, 2014 WL 5473797, *9 (D. Or. Oct. 28, 2014) (degenerative disc disease is a condition that, "by definition, progressively worsens over time"). As such, it is unclear from the record if, or when, plaintiff became disabled.

Accordingly, further proceedings are required to resolve this case. See Treichler, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful legal error is to remand for further administrative proceedings). Upon remand, the ALJ must reconsider the medical evidence, and reformulate plaintiff's RFC and obtain additional VE testimony, if necessary.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 7th day of August, 2019.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge
